In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3201

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

*Plaintiff-Appellant,*

*v.*

AUTOZONE, INC., and
AUTOZONERS, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 5579 — **Amy J. St. Eve**, *Judge.*

ARGUED APRIL 7, 2016 — DECIDED JUNE 20, 2017

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* From 2008 to 2012, Kevin Stuckey
worked as a sales manager for the auto-parts retailer Auto-
Zone, Inc. During his four years with the company, Stuckey
was transferred between Chicago-area stores several times.
None of these transfers entailed any loss in pay, benefits, or
job responsibilities. In July 2012 he was transferred again,

this time from a store on Kedzie Avenue that serves a largely Hispanic clientele. This transfer, too, involved no reduction in his pay or responsibilities.

Stuckey never reported for work at his new assignment. Instead he filed a complaint with the Equal Employment Opportunity Commission accusing AutoZone of racial discrimination in violation of Title VII. Stuckey is black; he claimed that AutoZone transferred him out of the Kedzie location in an effort to make it a "predominantly Hispanic" store.

The EEOC filed suit on Stuckey's behalf alleging that the transfer violated 42 U.S.C. 2000e-2(a)(2), an infrequently litigated provision in Title VII that makes it unlawful for an employer "to limit, segregate, or classify his employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." The district judge granted summary judgment for AutoZone, holding that the transfer was not an adverse employment action.

The EEOC contests this conclusion, arguing that the statute doesn't require the claimant to prove that the challenged action adversely affected his employment opportunities or status. That reading cannot be squared with the plain statutory text. We affirm.

## I. Background

Stuckey began working for AutoZone as a salesperson in January 2008 and was originally assigned to a store located at the intersection of Ogden Avenue and Pulaski Road in Chicago. He worked there for about eight months, received a

raise, and then was transferred to the AutoZone store located at 4416 S. Kedzie Avenue at the same pay, benefits, and job responsibilities. He worked at the Kedzie store for about 18 months, received another raise, and was promoted to sales manager with a more substantial increase in pay and responsibilities. In May or June of 2010, he was transferred to another Chicago store and a few weeks later was transferred again. In May 2011 AutoZone returned Stuckey to the Kedzie store. None of these transfers entailed any reduction in his pay, benefits, or job responsibilities.

The Kedzie store is located in an area largely populated by Hispanics, and the clientele at the store reflects the surrounding neighborhood. Robert Harris was AutoZone's district manager responsible for overseeing the Kedzie store (and about a dozen others). Harris is black; he is the decision-maker behind Stuckey's many transfers, including the one at the center of this case.

When Stuckey returned to the Kedzie store in 2011, his immediate supervisor was Vernon Harrington, the store manager. Harrington is also black. It's undisputed that Stuckey and Harrington did not get along. But the parties disagree about whether Stuckey asked to be transferred out of the Kedzie store because of this discord. Harris and Harrington testified in their depositions that he did. Stuckey admitted only that he and Harrington did not get along well; he did not recall asking for a transfer.

More specifically, Harrington testified that Stuckey was frustrated and wanted to transfer out of the Kedzie store because he couldn't communicate well with the customers. In fact, Harrington said that Stuckey was upset that he was not being transferred from the Kedzie store quickly enough.

To expedite the matter, Harrington contacted Tina Cleveland, a human resources manager at AutoZone, to tell her that Stuckey wanted a transfer.

In the meantime, Harrington contacted Harris to let him know that he'd had to discipline Stuckey a few times and that Stuckey didn't respond well. Apparently this was meant to move the transfer decision along. Harrington was under the impression that one of the reasons Stuckey could not be transferred right away was that attendance problems made him temporarily ineligible. He also understood that Harris didn't have anywhere else to place him just then.

In any event, the transfer decision came in July 2012. Harrington told Stuckey that he was being transferred to a store located at 103rd Street and South Michigan Avenue. Harris explained the reasons for the transfer this way: "[T]he [new] store had a need," and "[Stuckey] was wanting to go … . [He] and his store manager couldn't see eye to eye. And [the new store] was closer to [Stuckey's] home, so I felt he would be the best one for that store … ." Stuckey recalls the event differently. He testified that when he called Harris to ask why he was being transferred, Harris replied that he was trying to "keep [the Kedzie store] predominantly Hispanic" and also that the "sales are down, he was basically trying to get the sales back up to where they're supposed to be at."

Like the earlier transfers, this one entailed no reduction in pay, benefits, or job responsibilities. Moreover, as Stuckey indicated in his EEOC complaint (and admitted in his deposition), he actually "didn't mind" being transferred from the Kedzie store. He also acknowledged that Harris never made any comments about his race or the race of any other Auto-

Zone employee. Finally, he acknowledged that the new store was closer to the home address listed in his personnel file. (Apparently he no longer lived at that address but had not updated his file.)

Rather than accept the transfer, Stuckey chose to abandon his job; he did not report for work at his new assignment. Instead he filed a charge with the EEOC claiming that AutoZone discriminated against him because of his race in violation of Title VII.

The EEOC filed this suit on his behalf alleging that the transfer violated § 2000e-2(a)(2), which makes it unlawful for an employer to segregate his workforce by race "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." Following discovery, AutoZone moved for summary judgment, arguing that the record conclusively established that the transfer (1) was not an act of intentional segregation of its workforce by race and (2) did not adversely affect Stuckey's employment status. The district judge accepted the second argument and held that the undisputed evidence showed that Stuckey did not suffer an adverse employment action. The judge entered summary judgment for AutoZone.

For completeness we note a few additional undisputed factual points. During and shortly after these events, several black employees voluntarily transferred out of the Kedzie store specifically because of the language barrier with customers, and some Hispanic employees were promoted or newly hired. On the other hand, after Stuckey quit, Auto-Zone also hired new black employees to work at the Kedzie

store and promoted some who were already employed there.

## II. Discussion

Title VII's principal provision targeting discrimination in the workplace states:

> (a) Employer practices
>
> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

Most Title VII litigation involves the first subsection. This case involves the second. Though not often litigated, the terms of subsection (a)(2) are straightforward enough: Employers may not "limit, segregate, or classify" their employees by race (or another listed characteristic) "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect"

his employment. The EEOC alleges that AutoZone violated this provision by transferring Stuckey for the purpose of creating a predominantly Hispanic workforce at its Kedzie store.

We assume for the sake of argument that the evidentiary record, viewed in Stuckey's favor, reveals a material factual dispute about whether AutoZone intentionally segregated Stuckey because of his race, as the EEOC maintains. We note, however, that the factual support for a finding of intentional segregation is limited to Stuckey's assertion that Harris told him that the reason for the transfer was to create a "predominantly Hispanic" store at the Kedzie location. Harris denied saying this, and no other evidence corroborates this rationale for the transfer. Giving Stuckey's version the benefit of the doubt, as we're required to do, we move directly to the question that was ultimately decisive in the district court: Did the EEOC present sufficient evidence from which a reasonable jury could conclude that the transfer adversely affected Stuckey's employment?

The answer is "no." The evidence is undisputed that the July 2012 transfer was purely lateral, like the others before it, and entailed no reduction in pay, benefits, or job responsibilities. Nor did it otherwise alter his conditions of employment in a detrimental way.

The EEOC responds to this factual difficulty with a novel legal argument. The agency argues that a subsection (a)(2) claimant, unlike a subsection (a)(1) claimant, is not required to prove that the challenged action adversely affected his employment opportunities or had a tendency to do so. As the EEOC reads the statute, *any* action to limit, segregate, or classify employees because of race *automatically* violates

§ 2000e-2(a)(2). On this understanding, it's not necessary for the plaintiff to produce *evidence* that the challenged action deprived or tended to deprive him of employment opportunities or otherwise adversely affected his employment status. Those effects, according to the EEOC, are inherent in the act and need not be proved.

This argument eliminates much of the statutory text. Or more precisely, it leaves much of the statutory text with no meaningful work to do. If it's not necessary to show that the challenged employment action "deprive[d] or tend[ed] to deprive" the employee of employment opportunities "or otherwise adversely affect[ed] his status as an employee," what is the point of this statutory language? We read § 2000e-2(a)(2) to require case-specific proof that the challenged employment action had these effects.

The EEOC relies on two of our cases—*Chaney v. Plainfield Center*, 612 F.3d 908 (7th Cir. 2010), and *Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289 (7th Cir. 2000)—but neither supports the agency's interpretation of subsection (a)(2). *Chaney* did not involve subsection (a)(2) at all. That case centered on Title VII's exception for bona fide occupational qualifications. *Chaney* was a challenge to a nursing home's practice of honoring the racial preferences of its residents when assigning nursing assistants to care for them. A black nursing assistant sued, alleging that this practice, along with frequent racially tinged comments and epithets by her white coworkers, subjected her to a hostile work environment in violation of § 2000e-2(a)(1). 612 F.3d at 910–12. We rejected the nursing home's position that the race-matching policy was a bona fide occupational qualification and allowed the hostile-environment claim to proceed.

*Id.* at 912–15. None of this has any bearing on the proper interpretation of § 2000e-2(a)(2).

The EEOC's reliance on *Kyles* is likewise misplaced. The question in *Kyles* was whether job testers had standing to sue for violation of § 2000e-2(a)(2). There, suit was brought by two black job testers who worked for Chicago's Legal Assistance Foundation on a project to expose employment discrimination by pairing with white job testers and posing as job applicants at private employers in the area. 222 F.3d at 292–94. The two black testers were turned down for a job as a receptionist in favor of the white tester. *Id.* They sued the employer under § 2000e-2(a)(2), but the district court dismissed the suit for lack of standing. The judge held that because they were only *hypothetical* job applicants, they suffered no injury that could support Article III standing.

We reversed, noting that "[w]hen a job applicant is not considered for a job simply because she is African-American, she has been limited, segregated, or classified in a way that would tend to deprive not only her, but any other individual who happens to be a person of color, of employment opportunities." *Id.* at 298. "The fact that [the plaintiff job testers] had no interest in actually working for the company certainly speaks to the nature and extent of their injuries as well as the appropriate relief." *Id.* at 300. "But it does not rule out the prospect that they *were* injured. We have long recognized that humiliation, embarrassment, and like injuries—the very type of injuries that [the plaintiffs] allege they suffered—constitute cognizable and compensable harms stemming from discrimination." *Id.*

Our analysis of the standing question raised in *Kyles* does not support the EEOC's interpretation of subsection (a)(2).

We held only that the job testers alleged an injury sufficient to support Article III standing to sue. Nothing in that holding relieves a claimant in a § 2000e-2(a)(2) suit of the obligation to prove that the challenged job action deprived him of employment opportunities or otherwise adversely affected his employment status.

We note in closing that § 2000e-2(a)(2) makes it unlawful to segregate employees by race even if that action has only a *tendency* to deprive a person of employment opportunities. In that sense subsection (a)(2) *does* cast a wider net than subsection (a)(1), which speaks more concretely in terms of actions that "discriminate against any individual." *See Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006) (explaining that the requirement of an "adverse employment action" in a claim for violation of § 2000e-2(a)(1) is a proxy for "discrimination"). So we reject AutoZone's argument, accepted by the district judge, that the lack of an "adverse employment action" defeats a suit under § 2000e-2(a)(2). But the broader scope of subsection (a)(2) doesn't help the EEOC's case. No evidence suggests that the July 2012 transfer even *tended* to deprive Stuckey of any job opportunity.

It's well established that a purely lateral job transfer does not normally give rise to Title VII liability under subsection (a)(1) because it does not constitute a materially adverse employment action. *See Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) ("[A] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance … [,] cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either.") (quotation marks omitted); *Lucero*

*v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 730–31 (7th Cir. 2009). The result is the same in this suit under subsection (a)(2). The evidence does not permit a reasonable jury to find that Stuckey's lateral transfer deprived or even *tended* to deprive him of any employment opportunity or otherwise adversely affected his employment status. Indeed, at oral argument the EEOC disclaimed any interest in an opportunity to present such evidence, resting its entire case on the argument that no such evidence is required. For the reasons we've explained, that's an incorrect reading of the statute. The district judge properly entered summary judgment for AutoZone.

AFFIRMED.